UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

ARLYNN ABRAMSON,

                        Plaintiff,        07 Civ.  (   )

          -against-

MAUREEN FLAHERTY, individually,
CHARLES V. SULC, individually, and the
MASSAPEQUA UNION FREE SCHOOL
DISTRICT,

                        Defendants,

------------------------------------------------------------x

**COMPLAINT**

**Jury Trial Demanded**

Plaintiff ARLYNN ABRAMSON, by her attorneys Lovett & Gould, LLP, for her complaint respectfully states:

## NATURE OF THE ACTION

1. This is an action for compensatory and punitive damages, proximately resulting from Defendants' conduct as engaged in under color of the laws of the State of New York, for violations of Plaintiff's rights as guaranteed by the First and Fourteenth Amendments, 42 U.S.C. §§1981, 1983, and 42 U.S.C. §2000e *et. seq.*

## JURISDICTION

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343. With respect to Plaintiff's Title VII claim, on March 26, 2007, the United States Equal Employment Opportunity Commission duly issued to her a Notice of Right to Sue (EEOC Charge No. 520-2007-00750).

1

## THE PARTIES

3. Plaintiff ARLYNN ABRAMSON is a practicing Orthodox, Jewish citizen of the United States, a domiciliary of the State of New York, and a resident Massapequa. At all times relevant to this complaint she was employed by the Defendant District as a "Curriculum Associate" in the District's Music Department. She satisfactorily completed her probationary service in that job position and in May of 2005 acquired permanent status. In that connection she is a member of a collective bargaining unit the contract for which forbids the Defendants from requiring Plaintiff to work during Summer School

4. Defendant MAUREEN FLAHERTY (hereinafter "Flaherty"), who is sued in her individual and personal capacities only, at all times relevant to this complaint was the Superintendent of Schools for the Defendant District and knew, based upon her  personal communications with Plaintiff, that Plaintiff is a practicing Orthodox Jew. At the time Flaherty was hired by the District she had a well established, publicly known reputation as an alcoholic - - as evidenced by her conduct while she was employed by and terminated from the Florida Union Free School District. DePace v. Flaherty, 00 Civ. 4000 (LMS)(S.D.N.Y.). During Flaherty's tenure with the Defendant District she also established a reputation for making unwanted/unsolicited sexually inappropriate contact with female subordinates, including *inter alia* Plaintiff - - who expressed concerns regarding Flaherty's repulsive conduct to Sulc.

5. Defendant CHARLES V. SULC (hereinafter "Sulc"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was (except as otherwise stated) the Deputy Superintendent of Schools for the Defendant District and

knew, based upon personal communications with Plaintiff, that Plaintiff is a practicing Orthodox Jew.

6. Defendant MASSAPEQUA UNION FREE SCHOOL DISTRICT (hereinafter "District") is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of said State.

## THE FACTS

**Sexual abuse of female students & Sulc's gag order**

7. During the period of Plaintiff's probationary employment with the District, District administrators learned that a male teacher in the District's Music Department for years had been sexually abusing numerous female students assigned to his classes.

8. With a view towards insulating the District from civil litigation on behalf of that teacher's multiple victims and/or their parents, Sulc ordered Plaintiff to execute a written acknowledgement that she was forever forbidden - - under direct threat of job termination - - to in words or substance ever communicate with anyone regarding: that sexual abuse; the nature of the sexual abuse; the identities of the victims; the identity of the teacher/molester; and/or the fact that with the District's assistance that active pedophile had been enabled to obtain another teaching position in a different school district. In that connection Sulc's directive and threat constituted crimes [New York State Penal Law Section 195.00(1, 2) (Official Misconduct, a Class A Misdemeanor), Section 135.60(8, 9) [Coercion in the Second Degree, a Class A Misdemeanor) and Section 135.65(c) (Coercion in the First Degree, a Class D felony].

3

9. Out of fear, given Sulc's threat, Plaintiff has to date reluctantly and unwillingly maintained silence regarding the matter and as a result was and continues to be chilled in the exercise of her rights as guaranteed by reason of the First Amendment.

**Impairment of Religious Practices**

10. With respect to the summer of Plaintiff's first year of employment with the District she planned and booked a trip to Israel in accordance with and furtherance of her deeply held religious beliefs - - a circumstance known to the Defendants.

11. Despite the circumstance that Plaintiff's collective bargaining agreement forbade the Defendants from requiring her to work with respect to Summer School, Plaintiff was ordered to do so by the Defendants under threat of termination of her then probationary employment. As a result she was required to cancel her scheduled trip to Israel and her religious exercise was compromised - - to Defendants' knowledge.

12. For the two succeeding summers, and despite the referenced provision in her collective bargaining agreement, Plaintiff was forced by Defendants to work at Summer School - - a circumstance that frustrated her then plans, known to Defendants, to travel to Israel in accordance with and furtherance of her religious beliefs.

13. During the course of Plaintiff's employment she has repeatedly requested, without success, that Flaherty and Sulc not force her to work on her Sabbath - - Friday evenings and Saturday mornings so that she could without interference fulfill her religious obligations by attending services.

14. On numerous occasions Sulc and Flaherty have intentionally introduced into the workplace unwanted/unsolicited comments and references of a religious nature

intended to disparage and/or upset Plaintiff because she is a practicing Orthodox Jew,
including *inter alia*:

    a. Singling her out for questioning in the presence of sixty other District
administrators about her travel to Israel,

    b. Singling her out and publicly asking her in the presence of District
Administrators detailed information regarding various Jewish religious
holidays,

    c. Commencing at least one meeting involving Sulc, Plaintiff's union
president, and Plaintiff by Sulc and the union president discussing how
their church had been desecrated with swastikas, and,

    d. On the opening day of the school directing all one thousand staff
members to move up to the front of the auditorium because everyone
knows "that's where the pews are in the church".

15. By reason of Flaherty's self-professed religious and ethnic bigotry she
publicly announced to Plaintiff in the presence of other administrators that if she "had it
[her] way the entire District would be comprised of Italian and Irish" staff members.

16. As to Plaintiff's disinterest in going out drinking with District administrators
after work, Flaherty advised Plaintiff: "Of course not, you're Jewish. You don't drink".

17. By reason of Sulc and Flaherty's degrading conduct and statements with
respect to Plaintiff's religion, other staff members have been encouraged to and in fact
made degrading religious-oriented comments to Plaintiff including reference to Jewish
people who follow holidays like Shavuoth as wearing clothing with "strings" handing out
of them.

18. Due to Plaintiff's religious orientation Defendants have intentionally overloaded her with work assignments, publicly degraded and censured her in the presence of peers, made degrading comments regarding her clothing (which is extremely conservative in light of Plaintiff's religious beliefs) - - and required her to perform job responsibilities in nine separate school district buildings, with a view towards forcing her to resign.

19. In that connection and as a result of Flaherty's anti Semitic beliefs, she has repeatedly advised Plaintiff that she is trying to "market" her [Plaintiff] - - that is find her a job in a different school district as part of a District pattern and practice of forcing the resignation of Jewish administrators and/or teachers.

20. Defendants' continuing, systemic and regular anti Semitic behavior and comments as directed at Plaintiff and their imposition of a near-impossible workload upon her have deliberately adversely affected her in the terms and conditions of employment as a result of which she will unwillingly retire as soon as she is retirement eligible.

**Flaherty gag order**

21. In or about June of 2007, the Board of Education upon information and belief learned about Flaherty's history of alcoholism, episodes involving her drunken driving, and/or intra-District complaints by female employees regarding Flaherty's sexually inappropriate behavior with respect to them.

22. As a result she was summarily suspended as Superintendent of Schools by the Board of Education and Sulc was ensconced as the Acting Superintendent.

6

23. With a view towards covering-up Flaherty's history of alcoholism and/or sexual misconduct on the job, keeping secret the failure of the District to take action against her by reason of that behavior, and to avoid the public embarrassment that is Maureen Flaherty, Sulc and the District summarily imposed an absolute gag order on Plaintiff and other District employees - - forbidding them to speak with anyone regarding Flaherty's suspension, her past history of failures at other school districts from which she was ejected, her alcoholism, her sexually inappropriate conduct and/or her driving while intoxicated.

24. As a proximate result of Defendants' conduct Plaintiff has been forced to suffer: repeated and continuing chilling of her rights as guaranteed by the First Amendment; disparate treatment in the terms and conditions of her employment by reason of her religious beliefs; emotional upset; public humiliation; public degradation; shame; anxiety; a hostile work environment by reason of her religion; and has otherwise been rendered sick and sore.

## AS AND FOR A FIRST CLAIM
## AGAINST ALL DEFENDANTS

25. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "24", inclusive.

26. Under the premises Defendants' conduct violated Plaintiff's rights as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1993.

## AS AND FOR A SECOND CLAIM
## AGAINST ALL DEFENDANTS

27. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "24", inclusive.

28. Under the premises Defendants' discriminatory conduct, premised upon Plaintiff's race, violated 42 U.S.C. §1981.

## AS AND FOR A FOURTH CLAIM
## AGAINST ALL DEFENDANTS

29. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "24", inclusive.

30. Under the premises Defendants' disparate treatment of Plaintiff violated her right to Equal Protection as guaranteed by reason of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A FIFTH CLAIM
## AGAINST ALL DEFENDANTS

31. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "24", inclusive.

32. Under the premises the District's conduct as Plaintiff's employer, and that of Sulc and Flaherty as aiders and abettors, violated Plaintiff's rights as guaranteed by Section 296 *et. seq.* of the New York State Executive Law.

WHEREFORE a judgment is respectfully requested:

1. On the First through Fourth Claims awarding:

8

     a.  Against the individually named Defendants such

         punitive damages as the jury may impose, and against

         all Defendants,

     b.  Awarding such compensatory damages as the jury may

         determine, along with

     c.  Reasonable attorney's fees and costs,

2. On the Fifth Claim awarding such compensatory damages as

    the jury may determine, and,

3. Granting such other and further relief as to the Court seems just

    and proper.

Dated: White Plains, N.Y.
       June 23, 2007

LOVETT & GOULD, LLP
By:
       Jonathan Lovett (4854)
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401